## IN THE UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

MIDWEST RENEWABLE ENERGY, LLC,
individually and on behalf of all others similarly
situated,

        Plaintiff

    v.

ARCHER DANIELS MIDLAND COMPANY,

        Defendant.

Case No. 2:20-cv-02212

Hon. Colin Stirling Bruce

**ADM'S MEMORANDUM
IN SUPPORT OF ITS RENEWED MOTION TO DISMISS
MRE'S AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................... 1

BACKGROUND ...................................................................................... 3

      A.     The *AOT* case and discovery......................................................3

      B.     The *MRE* original complaint and dismissal ...............................4

      C.     The *MRE* amended complaint...................................................5

      D.     The Seventh Circuit's decision in *United Wisconsin*...................5

ARGUMENT .......................................................................................... 7

    I.     The Seventh Circuit, following the Supreme Court's lead, is deeply skeptical of predatory pricing claims. ........................................ 7

    II.    The Seventh Circuit in *United Wisconsin* rejected the theory of recoupment on which plaintiff's claims here depend. ....................... 9

    III.   Plaintiff's bare allegation of ADM charging higher prices does not state a claim under *United Wisconsin*. ............................................. 10

      A.     Plaintiff *did not* allege facts plausibly showing that consumers paid sustained monopoly prices.........................................................11

      B.     Plaintiff *cannot* allege facts plausibly showing that consumers paid sustained monopoly prices for ethanol. ......................................15

    IV.   This Court should dismiss this case with prejudice. ............................ 19

CONCLUSION........................................................................................ 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.A. Poultry Farms v. Rose Acre Farms*,
 881 F.2d 1396 (7th Cir. 1989) ................................................................................14

*Amarel v. Connell*,
 102 F.3d 1494 (9th Cir. 1996) ................................................................................15

*AOT Holding AG v. Archer Daniels Midland Co.*,
 No. 19-cv-02240 (C.D. Ill.) ...............................................................................3, 9

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)...............................................................................................11

*Atl. Richfield v. USA Petroleum*,
 495 U.S. 328 (1990)..................................................................................................9

*Bell Atl. v. Twombly*,
 550 U.S. 544 (2007).................................................................................................11

*Bell v. City of Country Club Hills*,
 841 F.3d 713 (7th Cir. 2016) ................................................................................17

*Brooke Grp. v. Brown & Williamson Tobacco*,
 509 U.S. 209 (1993)..............................................................................................7, 9

*Cargill v. Monfort of Colorado*,
 479 U.S. 104 (1986)..............................................................................................8, 9

*Elec. Indus. v. Zenith Radio*,
 475 U.S. 574 (1986)......................................................................................7, 8, 11, 12

*Energy Conversion Devices Liquidation Tr. v. Trina Solar*,
 833 F.3d 680 (6th Cir. 2016) ................................................................................9

*In re Frito-Lay N. Am. All Nat. Litig.*,
 2013 WL 4647512 (E.D.N.Y.)..............................................................................18

*Garcia v. City of Chicago*,
 24 F.3d 966 (7th Cir. 1994) ...................................................................................19

*Gonzalez-Koeneke v. West*,
 791 F.3d 801 (7th Cir. 2015) ................................................................................19

*Menominee Indian Tribe v. Thompson,*
    161 F.3d 449 (7th Cir. 1998) ......................................................................17

*Montera v. Premier Nutrition,*
    111 F.4th 1018 (9th Cir. 2024) ..................................................................18

*R.J. Reynolds Tobacco v. Cigarettes Cheaper!,*
    462 F.3d 690 (7th Cir. 2006) ..............................................................12, 13

*Schachar v. Am. Academy of Ophthalmology,*
    870 F.2d 397 (7th Cir. 1989) ....................................................................16

*Schor v. Abbott Labs.,*
    457 F.3d 608 (7th Cir. 2006) ....................................................................16

*Schwegmann Bros. Giant Super Mkts. v. Eli Lilly,*
    205 F.2d 788 (5th Cir. 1953) ....................................................................11

*Superior Prod. v. Gordon Auto Body Parts,*
    784 F.3d 311 (6th Cir. 2015) ......................................................................7

*Synergetics USA v. Alcon Labs.,*
    2009 WL 1564113 (S.D.N.Y.).....................................................................13

*Tamayo v. Blagojevich,*
    526 F.3d 1074 (7th Cir. 2008) ..................................................................11

*United Wisconsin Grain Producers v. Archer Daniels Midland,*
    144 F.4th 976 (7th Cir. 2025) ........................................................... *passim*

*VBR Tours v. Nat'l R.R. Passenger,*
    2016 WL 4945015 (N.D. Ill.) ....................................................................13

*Wallace v. Int'l Bus. Machs.,*
    467 F.3d 1104 (7th Cir. 2006) ..................................................................16

*Weyerhaeuser v. Ross-Simmons Hardwood Lumber,*
    549 U.S. 312 (2007)............................................................................7, 8, 13

**Other Authorities**

Areeda & Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and
    Their Application, ¶ 726a (5th ed. Cum. Supp. 2021).....................................13, 17

Areeda & Turner, Predatory Pricing and Related Practices Under Section 2 of the
    Sherman Act, 88 Harv. L. Rev. 697 (1975).......................................................8

Bork, The Antitrust Paradox (1978) .......................................................................8

Easterbrook, Limits of Antitrust, 63 Texas L. Rev. 1, 18 (1984) .................................................9, 15

Easterbrook, Predatory Strategies and Counterstrategies, 48 U. Chi. L. Rev. 263 (1981).......................................................................................................................................8

FTC, 2020 Report on Ethanol Market Concentration (March 3, 2021), *available at* ftc.gov/reports/2020-report-ethanol-market-concentration ......................................17

Koller, The Myth of Predatory Pricing-An Empirical Study, 4 Antitrust Law & Econ. Rev. 105 (1971) ..........................................................................................................8

McGee, Predatory Price Cutting: The Standard Oil (N.J.) Case, 1 J. Law & Econ. 137 (1958)...............................................................................................................................8

McGee, Predatory Pricing Revisited, 23 J. Law & Econ. 289 (1980)...........................................8

Posner, The Chicago School of Antitrust Analysis, 127 U. Pa. L. Rev. 925 (1979)......................8

## INTRODUCTION

The plaintiffs in every ethanol case before this Court founded their claims on an identical allegation: ADM sold its own ethanol too cheaply, forcing down ethanol prices across the United States from late 2017 to late 2019, all the while recouping its losses with gains on ethanol futures that the low prices enabled. Plaintiff here and the plaintiffs in *United Wisconsin* made that allegation the center of their identical claims that ADM's conduct violated the antitrust laws.

ADM moved to dismiss their original antitrust complaints on the ground that cutting prices is an essential act when competing to sell a commodity like ethanol, and the antitrust laws exist to protect low prices for consumers. Plaintiffs then relabeled their claims as seeking recovery for predatory pricing. But they continued to insist that ADM used low ethanol prices to produce gains on futures to recoup.

The Seventh Circuit's recent decision in *United Wisconsin* emphatically rejected those claims. It held that unless a plaintiff shows that ADM eventually caused ***consumers*** to pay ***sustained monopoly prices***, claims of predatory pricing must be dismissed.

That decision is based on a fundamental principle: the "antitrust laws are designed to benefit consumers." *United Wisconsin Grain Producers v. Archer Daniels Midland*, 144 F.4th 976, 982 (7th Cir. 2025). Consumers benefit from low prices. Thus, even if plaintiffs are correct that "ADM manages to profit from below-cost [ethanol] prices" by trading futures, ADM's conduct in causing low prices is "a benefit, not a burden, for consumers." *Id*. at 982-83. Unless they later pay prices that are both at the *monopoly* level and *sustained*, "consumers receive the 'boon' of lower prices (even if competitors must brave the curse of the same)." *Id*. at 982. Any other approach would "stir[] up the intolerable risks of chilling legitimate, procompetitive conduct." *Id*. at 983 (cleaned up).

The Seventh Circuit's decision in *United Wisconsin* applies equally here. Plaintiff has always insisted that ADM recouped through gains on futures, not through consumers paying sustained monopoly prices. Plaintiff even told this Court that it was ***not*** "seek[ing] to allege a traditional predatory pricing claim" that culminates in "raising prices." (Dkt. 47, 1st Dismissal Order at 7.) Later, its motion for class certification confirmed that plaintiff "asserts recoupment via ADM's massive gains on its short positions in the ethanol futures market." (Dkt. 75, Motion for Class Certification at 19.) The motion did not mention ADM recouping by overcharging consumers through sustained monopoly prices. This case, like *United Wisconsin*, has always been about low prices and gains on futures, so this Court should dismiss it.

In response to this motion, plaintiff is sure to argue that a bare, conclusory allegation it tacked onto the amended complaint—ADM caused prices "*to be higher than they otherwise would have been* beginning by early 2020" (Dkt. 60, Am. Compl. ¶ 84)—saves the day. It does not. The *United Wisconsin* decision required plaintiff to plead facts plausibly showing that ADM charged consumers monopoly prices and did so for long enough to recoup losses on around two years' worth of predatory prices. That is what is meant by *sustained* monopoly prices—and it is the only part of a predatory pricing scenario that the antitrust laws seek to prevent. But plaintiff pleaded nothing of the sort. The amended complaint does not even mention *any* actual prices from 2020. And it says nothing at all about ADM charging *monopoly* prices for *any* length of time or about consumers ever paying monopoly prices. Any argument that this case should proceed because plaintiff merely intoned the word "higher" would make a mockery of the Seventh Circuit's decision. It would also bring about the chilling effects that the Seventh Circuit and Supreme Court have both warned against.

The reason plaintiff did not make the necessary allegations is that they would be false. Incontrovertible data from the Federal Trade Commission and U.S. Energy Information Administration show that ethanol *prices* in 2020 actually fell to their *lowest* point in at least six years. And average *margins* for ethanol producers in 2020 were also *lower* than in 2018—a year when ADM was supposedly suppressing ethanol prices. The idea that ADM imposed monopoly prices on a sustained basis (indeed, for any time period) and earned monopoly profits in early 2020 is completely implausible.

With the benefit of the Seventh Circuit's guidance, in a case that is indistinguishable from this one, this Court should dismiss. Given that plaintiff has already amended the complaint once—after knowing that ADM was seeking dismissal for failure to adequately plead recoupment, and after receiving massive discovery from ADM—and given that the deadline for amending passed over four years ago, the dismissal should be with prejudice. This is simply not a legitimate antitrust case.

## BACKGROUND

Given this Court's familiarity with this case and *United Wisconsin*, this background section covers only events relevant to this motion.

### A.    The *AOT* case and discovery

The group of ethanol cases before this Court began in September 2019 with the *AOT* case. Plaintiff here (MRE) sued in July 2020. Plaintiff here and the plaintiffs in *United Wisconsin* copied their allegations but not their causes of action from *AOT*. Unlike *AOT*, this case and *United Wisconsin* asserted claims of monopolization and attempted monopolization. But all three cases center on the allegation that from November 2017 to around September 2019, ADM sold its own ethanol too cheaply at the Argo terminal, and the prices of those sales determined ethanol prices across the United States.

3

This Court ordered the parties to coordinate discovery across all the ethanol cases. As a result, plaintiff here had the benefit of receiving over two million pages of ADM documents, ADM's responses to 25 interrogatories, and over 100 hours of testimony from ADM witnesses in twelve depositions. All this discovery occurred *before* plaintiff filed its amended complaint in August 2021. (Am. Compl. p. 1 n.1.) That amended complaint is the subject of this motion.

**B.     The *MRE* original complaint and dismissal**

This Court's order dismissing the original complaint explains, "This is a putative class action involving alleged unlawful conduct by ADM to obtain monopoly power to *depress* ethanol prices." (Dkt. 47, 1st Dismissal Order at 2 (emphasis added).) The alleged conduct occurred at the Argo terminal, where ethanol sales supposedly determine the price indexes that producers across the nation use in their ethanol sales contracts. (*Id*.) "Plaintiff alleges that ADM's conduct resulted in a *decrease* of ethanol prices at the Argo Terminal and an accompanying *decrease*" in prices in producers' ethanol contracts, causing them to lose revenue. (*Id*. at 3 (emphasis added).) By trading ethanol futures, ADM supposedly earned "substantial gains …, sufficient to compensate ADM for its losses incurred at Argo." (*Id*.)

ADM moved to dismiss, in part on the ground that plaintiff could not assert a predatory pricing claim because the complaint alleged only low prices, which are a benefit to consumers and so cannot establish antitrust injury. In response, "Plaintiff admits that it 'does not seek to allege a traditional predatory pricing claim.'" (*Id*. at 7 (quoting plaintiff).) Instead, "Plaintiff argues that ADM has been able to recoup its losses … not by raising prices after excluding other competitors, but rather through its gains … in the ethanol futures market." (*Id*.) This Court's order found that "Plaintiff's theory of recoupment is sufficient at this stage" but dismissed because, among other reasons, plaintiff did not allege that competitors exited the market. (*Id*. at 7-8.) After this Court dismissed the original complaint, plaintiff amended it.

### C.    The *MRE* amended complaint

"[T]he allegations contained within the Amended Complaint—and the claims derived therefrom—are largely identical to those in the original Complaint." (Dkt. 121, 2d Dismissal Order at 2.) The amended complaint made the same allegations about Argo prices determining US producer prices, ADM's conduct suppressing Argo prices, and ADM recouping through futures. (*Id*. at 2-4.)

ADM again moved to dismiss, arguing in part that recoupment for a predatory pricing claim could come only from the defendant later imposing monopoly prices, not from gaining on futures. The Court denied the motion, holding in part that recoupment could come from gains on futures. (*Id*. at 12-18.)

In *dicta*, the Court's order added that "to the extent that ADM argues that Plaintiff could only allege antitrust injury if it alleges *higher*, rather than lower, prices, paragraph 84 of the Amended Complaint" made a relevant allegation. (*Id*. at 18.) That paragraph alleges that after suppressing ethanol prices into September 2019, ADM caused prices "*to be higher than they otherwise would have been* beginning by early 2020." (Am. Compl. ¶ 84.)

After declining to dismiss the amended complaint, the Court stayed this case to await the Seventh Circuit's decision in *United Wisconsin* because the two cases are all but identical.

### D.    The Seventh Circuit's decision in *United Wisconsin*

In *United Wisconsin*, plaintiffs appealed from this Court's dismissal of their antitrust complaint. The Seventh Circuit's decision flatly rejected the theory of recoupment at the center of that case and this one. The decision explained why the antitrust claims failed in *United Wisconsin*. They must fail here for the same reason.

The Seventh Circuit began by explaining that "Ethanol prices attached to transactions that occur at the Argo Terminal determine the pricing indexes," which "[i]n turn … determine

ethanol prices in the U.S. ethanol market generally," including in producers' sales contracts. *United Wisconsin*, 144 F.4th at 979. Plaintiffs there had alleged that ADM was responsible for "depressing the price of ethanol at the Argo Terminal, the price indexes, and the price of ethanol in the U.S. market." *Id*. And there, as here, plaintiffs had alleged that "ADM made up for its losses by purchasing and cashing in on ethanol futures." *Id*.

Next, the Seventh Circuit explained the legal framework. Section 2 of the Sherman Act forbids monopolization and attempted monopolization, and those causes of action share the element of exclusionary conduct. *Id*. at 980. "Whether an act is exclusionary, rather than a form of aggressive competition, can be difficult to discern. Ultimately, our task is to distinguish between exclusionary acts, which decrease consumer welfare, and competitive acts, which increase it." *Id*.

The allegedly exclusionary conduct at issue here and in *United Wisconsin* is predatory pricing, which seeks "to eliminate or retard competition and thereby gain and exercise control over prices in the relevant market." *Id*. at 981 (cleaned up). For a monopolization claim involving predatory pricing, the defendant must "later recoup[] its losses by charging a monopoly price." *Id*. For an *attempted* monopolization claim involving predatory pricing, the defendant must achieve "the dangerous probability of recoupment via monopoly prices." *Id*. In short, "antitrust law cannot regulate below-cost prices that do not eventually morph into monopoly prices." *Id*. at 983.

"'Recoupment' … means charging higher prices *to consumers*." *Id*. at 982 (cleaned up). "To determine whether a plaintiff sufficiently alleges recoupment, we ask whether the plaintiff identifies profits that flow from monopoly prices." *Id*. "In order to recoup their losses, predators must obtain enough market power to *set higher than competitive prices*, and *then must sustain*

those prices long enough to earn in excess profits what they earlier gave up in below-cost prices." *Id.* (quoting *Brooke Grp. v. Brown & Williamson Tobacco*, 509 U.S. 209, 225-26 (1993)) (emphasis by the Seventh Circuit).

But the plaintiffs in *United Wisconsin* alleged—just as plaintiff here alleges—"that ADM recouped by profiting from derivatives contracts." *Id.* at 982. Given that they were not "alleging recoupment via monopoly prices," their claim was "doom[ed]." *Id.* at 981.

## ARGUMENT

Plaintiff's claims here are also doomed—for many reasons. But to comply with Judge Long's direction at the August 8, 2025, hearing, ADM has limited this motion to matters addressed in the Seventh Circuit's *United Wisconsin* decision, without addressing the other reasons that plaintiff has not stated a claim.

**I.    The Seventh Circuit, following the Supreme Court's lead, is deeply skeptical of predatory pricing claims.**

The Seventh Circuit's recognition in *United Wisconsin* that it can be difficult to distinguish anticompetitive acts from vigorous competition, and the Seventh Circuit's insistence that a plaintiff's allegations must strictly satisfy all requirements for predatory pricing claims— without exceptions or alternative theories—is borne out of decades of Supreme Court decisions expressing deep skepticism of predatory pricing claims. Almost 40 years ago, the Supreme Court in "*Matsushita* [*Elec. Indus. v. Zenith Radio*, 475 U.S. 574, 589-91 (1986)], undoubtedly the leading case, declared single-firm predatory pricing generally implausible." *Superior Prod. v. Gordon Auto Body Parts*, 784 F.3d 311, 320 (6th Cir. 2015).

*Matsushita*—like the Seventh Circuit's quotations from *Weyerhaeuser v. Ross-Simmons Hardwood Lumber*, 549 U.S. 312, 324 (2007), and *Brooke Grp.,* 509 U.S. at 225-26— emphasized just how implausible predatory pricing is. A predator must accept definite losses in

the short run in exchange for uncertain gains in the long run. Those uncertain gains depend on "maintaining monopoly power for long enough both to recoup the predator's losses and to harvest some additional gain," all the while staving off "quick entry by new competitors eager to share in the excess profits" of "monopoly pricing." *Matsushita*, 475 U.S. at 589.

That is why, after quoting an article by Judge Easterbrook making those points, the Supreme Court observed that "there is a consensus among commentators that predatory pricing schemes are rarely tried [by producers], and even more rarely successful." *Matsushita*, 475 U.S. at 589.[1] Later that same year, the Supreme Court found it to be "plain that the obstacles to the successful execution of a strategy of predation are manifold, and that the disincentives to engage in such a strategy are accordingly numerous." *Cargill v. Monfort of Colorado,* 479 U.S. 104, 121 n.17 (1986).[2] "A rational business will rarely make this sacrifice." *Weyerhaeuser*, 549 U.S. at 323.

The problem for antitrust law is not merely that predatory pricing itself rarely if ever happens; the problem is also that predatory pricing *claims* are dangerous to the economy. "[T]he mechanism by which a firm engages in predatory pricing—lowering prices—is the same mechanism by which a firm stimulates competition." *Cargill*, 479 U.S. at 121 n.17. Given that "cutting prices in order to increase business often is the very essence of competition," "mistaken inferences … are especially costly, because they chill the very conduct the antitrust laws are

---

[1] In addition to Easterbrook, Predatory Strategies and Counterstrategies, 48 U. Chi. L. Rev. 263 (1981), the Supreme Court also relied on Bork, The Antitrust Paradox (1978); McGee, Predatory Pricing Revisited, 23 J. Law & Econ. 289 (1980); Areeda & Turner, Predatory Pricing and Related Practices Under Section 2 of the Sherman Act, 88 Harv. L. Rev. 697 (1975); Koller, The Myth of Predatory Pricing—An Empirical Study, 4 Antitrust Law & Econ. Rev. 105 (1971); and McGee, Predatory Price Cutting: The *Standard Oil (N.J.) Case*, 1 J. Law & Econ. 137 (1958).

[2] This time, the Supreme Court added Judge Posner to the list of antitrust scholars by relying on Posner, The Chicago School of Antitrust Analysis, 127 U. Pa. L. Rev. 925 (1979).

designed to protect." *Id*. (cleaned up). "It would be ironic indeed if the standards for predatory

pricing liability were so low that antitrust suits themselves became a tool for keeping prices

high." *Brooke Grp.*, 509 U.S. at 226-27.

For any court navigating the antitrust waters, this is the North Star: "Low prices benefit

consumers regardless of how those prices are set." *Atl. Richfield v. USA Petroleum*, 495 U.S.

328, 340 (1990). Thus, courts must be "leery of antitrust claims brought by competitors alleging

only that their rivals lowered prices." *Energy Conversion Devices Liquidation Tr. v. Trina Solar*,

833 F.3d 680, 682 (6th Cir. 2016). "When a business rival brings suit," as in the present case, "it

is often safe to infer that the [defendant's pricing] arrangement is beneficial to consumers."

Easterbrook, Limits of Antitrust, 63 Texas L. Rev. 1, 18 (1984).

## II.    The Seventh Circuit in *United Wisconsin* rejected the theory of recoupment on which plaintiff's claims here depend.

The amended complaint's *factual* allegations are unanimous: plaintiff contends only that

its rival ADM lowered prices—an act that benefits consumers. This case's genesis was *AOT*,

where the allegation about ADM lowering prices is at the core of the claims. Here, from the start,

plaintiff *disclaimed* "seek[ing] to allege a traditional predatory pricing claim" that culminates in

"raising prices." (Dkt. 47, 1st Dismissal Order at 7.) Instead, to show recoupment, plaintiff relied

on allegations regarding ADM's "gains … in the ethanol futures market." (*Id*.) The amended

complaint is more of the same. Like plaintiff's original complaint, it makes *factual* allegations

about ADM lowering prices (*e.g.*, Am. Compl. ¶ 81) but none about ADM imposing monopoly

prices.

The Seventh Circuit definitively rejected, as a basis for liability, the allegation "that

ADM recouped by profiting from derivatives contracts" rather than by "charging monopoly

prices." *United Wisconsin*, 144 F.4th at 982. Plaintiff's case depends on that allegation, so this Court should dismiss it with prejudice.

### III.    Plaintiff's bare allegation of ADM charging higher prices does not state a claim under *United Wisconsin*.

Despite consistently alleging that ADM recouped using futures—and despite *disclaiming* that ADM recouped through monopoly prices—plaintiff tacked a contrary sentence onto the very last paragraph of the body of the amended complaint's allegations. It asserts that ADM recouped by causing ethanol prices "*to be higher than they otherwise would have been* beginning by early 2020." (Am. Compl. ¶ 84.)

That was obviously a throwaway line—and it cannot save plaintiff's amended complaint. When defending the amended complaint against dismissal, plaintiff's response included several pages of argument about recouping via futures on the basis of lower prices. Plaintiff buried the "higher" prices allegation in a footnote. (Dkt. 65, Resp. to Mot. to Dismiss at 16 n.11.)

As the case went on, plaintiff continued to assert recoupment *solely* in the form of gains on futures. Plaintiff's class certification motion confirmed: "MRE asserts recoupment via ADM's massive gains on its short positions in the ethanol futures market." (Dkt. 75, Motion for Class Certification at 19.) Plaintiff's motion did not even mention, much less seek to certify a class based on, ADM recouping through "higher" or monopoly prices. In its class cert reply, plaintiff's only argument was that recoupment came from "derivatives profits," again without any mention of ADM recouping through "higher" or monopoly prices. (Dkt. 101, Class Cert. Reply at 14.) In short, this case has always been about recouping via futures.

Plaintiff added the throwaway line about "higher" prices to try to evade dismissal. But as the Seventh Circuit explained in *United Wisconsin*, it would make zero sense for ADM to suddenly switch from *successfully* recouping via futures to embarking on a highly *uncertain*

attempt to recoup through monopoly prices. Monopoly prices would quickly draw added competition—here, in the form of reopened plants and increased production at plants that never closed—to take advantage of monopoly profits. *Matsushita*, 475 U.S. at 589 ("it is not enough simply to achieve monopoly power [through predatory pricing], as monopoly pricing may breed quick entry by new competitors eager to share in the excess profits"); *Schwegmann Bros. Giant Super Mkts. v. Eli Lilly*, 205 F.2d 788, 792 (5th Cir. 1953) ("As pointed out long ago by Louis D. (later Mr. Justice) Brandeis, … 'high profits will invite even more competition.'").

Recouping via futures, as plaintiff alleged here, means that "ADM remain[ed] incentivized to charge below-cost prices because it [could] fully recoup its losses in real time via derivatives contracts." *United Wisconsin*, 144 F.4th at 982. Thus, "the low prices ADM set in motion ***will remain low***"—it would have been counterproductive for ADM to increase them. *Id*. (emphasis added). Plaintiff's conclusory and generic allegation here that ADM charged "higher" prices is nonsensical—and in any event does not help it state a claim.

### A. Plaintiff ***did not*** allege facts plausibly showing that consumers paid sustained monopoly prices.

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). "[L]abels and conclusions" are inadequate. *Id.*

For antitrust claims in particular, "a fuller set of factual allegations may be necessary to show that relief is plausible." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008). That is especially true of predatory pricing claims. As explained above, the Supreme Court considers those claims to be inherently *implausible* for reasons of basic economics, as well as *dangerous* because of the likelihood of discouraging competitive behavior—price cutting—that the antitrust laws are supposed to protect.

The Seventh Circuit's decision in *United Wisconsin* identifies three elements of recoupment for a claim of monopolization based on predatory pricing. To state a claim, a plaintiff must allege *facts* plausibly showing each one of the three elements. Plaintiff here alleged none.

First, ADM must have "completed its predatory pricing scheme by charging *monopoly prices*." *United Wisconsin*, 144 F.4th at 979 (emphasis added). Plaintiff "must allege" facts plausibly showing "that ADM recouped its investment in the predatory pricing scheme and that it did so by charging monopoly prices." *Id*. at 982.

The amended complaint, however, *never* alleges any facts plausibly showing that ADM charged monopoly prices. Instead, it makes the bare and conclusory allegation that ADM, after suppressing prices until late 2019, then caused prices "*to be higher than they otherwise would have been* beginning by early 2020." (Am. Compl. ¶ 84.) If plaintiff is right that ADM had been suppressing prices, and if plaintiff is also right that ADM stopped suppressing prices, of course prices went higher. But the Seventh Circuit has warned that "a return of price to a pre-discounting competitive level differs from elevation of price" to the point of violating the antitrust laws. *R.J. Reynolds Tobacco v. Cigarettes Cheaper!*, 462 F.3d 690, 698 (7th Cir. 2006). Plaintiff here alleged no facts showing what prices ADM charged in 2020, much less facts plausibly showing those were *monopoly* prices.

Second, ADM "*must [have] sustain[ed] those prices* long enough to earn in excess profits what [it] earlier gave up in below-cost prices." *United Wisconsin*, 144 F.4th at 982 (cleaned up; emphasis by the Seventh Circuit).[3] Here, that means fully recouping around *two*

---

[3] *See also Matsushita*, 475 U.S. at 590-91 ("must sustain those [monopoly] prices long enough to earn in excess profits what they earlier gave up in below-cost prices"); *Weyerhaeuser*, 549 U.S.

*years* of supposed predatory pricing. But the amended complaint contains absolutely no allegation at all, much less any facts, about ADM sustaining monopoly prices for *any* length of time. Plaintiff's claims fail for that reason as well. *VBR Tours v. Nat'l R.R. Passenger*, 2016 WL 4945015, at *4 (N.D. Ill.) (dismissing a predatory pricing claim based on a conclusory recoupment theory and implausible allegation that the defendant could sustain monopoly prices for a sufficient period to recoup losses); *Synergetics USA v. Alcon Labs.*, 2009 WL 1564113, at *4 (S.D.N.Y.) (dismissing a predatory pricing claim based on conclusory allegation that the defendant could recoup losses through monopoly profits and implausible allegation that defendant could sustain a long period of monopoly pricing).

Third, the "monopoly prices charged at the end of the scheme" must be charged "*to consumers*." *Id*. at 982 (cleaned up; emphasis by the Seventh Circuit). As the leading antitrust treatise explains, "predatory pricing's recoupment requirement is intended as a search for plausible consumer injury." Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application*, ¶ 726a (5th ed. Cum. Supp. 2021). "[T]he substantive evil that antitrust reprehends is not the injury to rivals, but the subsequent injury to consumers." *Id*.; *see also R.J. Reynolds*, 462 F.3d at 695 (a predatory pricing claim requires that the defendant "recoup by setting monopoly prices that injure consumers").

The amended complaint, however, alleges only that ADM *intended* for consumers to pay higher prices, *not* that consumers actually paid monopoly prices. (Am. Compl. ¶¶ 10(d), 14.) ADM sells ethanol to other companies, not to consumers, who buy it only after it is blended into

---

at 319-20 (requiring the monopoly prices to be "sufficient to compensate for the amounts expended on the predation, including the time value of the money invested in it").

gasoline. (*Id.* ¶¶ 25-27.) The amended complaint alleges nothing at all about gasoline prices. For all those reasons, plaintiff's monopolization claim fails.

Finally, the *United Wisconsin* decision explains that to assert an *attempted* monopolization claim based on predatory pricing—as plaintiff also asserts here (*Id.* ¶¶ 98-101)—plaintiff must show that ADM achieved "the dangerous probability of recoupment via monopoly prices." *United Wisconsin*, 144 F.4th at 981. But the amended complaint does not even make a conclusory allegation about a dangerous probability, much less allege facts plausibly showing it. Instead, the amended complaint alleges that ADM *already* recouped from gains on futures and *already* "realize[d] further recoupment" by imposing higher prices in the past. (Am. Compl. ¶ 1.)

Thus, just like the plaintiffs in *United Wisconsin*, plaintiff here has not alleged any "future, incomplete recoupment (i.e., whether a '*dangerous probability* of recoupment' existed), [which] an attempted monopolization claim require[s]." *United Wisconsin*, 144 F.4th at 983 (emphasis by the Seventh Circuit). Plaintiff here, like the plaintiffs there, alleges only "actual, completed monopolization." *Id.* In fact, plaintiff alleges that ADM's use of predatory prices *ended six years ago*. If monopoly prices never arrived, the attempted predation failed, benefited consumers, and is not actionable. *A.A. Poultry Farms v. Rose Acre Farms*, 881 F.2d 1396, 1401 (7th Cir. 1989). For all those reasons, plaintiff's attempted monopolization claim fails.

As noted above, this Court previously addressed, in *dicta*, plaintiff's allegation of "higher" prices. At that time, the Court did not have the benefit of the Seventh Circuit's decision in *United Wisconsin*. Accordingly, it did not discuss the amended complaint's complete lack of any facts plausibly showing that ADM caused or had a dangerous probability of causing consumers to pay sustained monopoly prices. Now that the decision has explained those requirements in the context of this case, this Court should dismiss with prejudice.

**B.      Plaintiff *cannot* allege facts plausibly showing that consumers paid sustained monopoly prices for ethanol.**

As explained above, plaintiff failed to plead facts establishing a claim for predatory pricing under the Seventh Circuit's decision in *United Wisconsin*. This section explains why they did not allege—and can never allege—those facts.

**1.      Plaintiff would have no claim if ADM recouped via sustained monopoly prices because plaintiff would have benefited from those prices just as much as ADM.**

First, there is an obvious reason this plaintiff cannot allege that ADM engaged in successful predation and then imposed sustained monopoly prices: plaintiff *survived* the supposed predation and has been selling ethanol ever since. "When defendants engage in predatory pricing …, the *competitor who is being driven out of the market* is the party with standing." *Amarel v. Connell*, 102 F.3d 1494, 1508 (9th Cir. 1996) (cleaned up; emphasis added). Plaintiff was not driven out. Instead, plaintiff's conclusory allegation of "higher" prices, if credited, would show that it enjoyed the same supposed monopoly profits as ADM, in an amount sufficient to more than compensate for having to sell ethanol at the earlier predatory prices.

As Judge Easterbrook has written, a predatory pricing "suit by [a] surviving rival" should always be dismissed. Limits of Antitrust, 63 Texas L. Rev. at 37. A surviving plaintiff "collects the same prices in today's market as the defendant. If the course of [predatory pricing] conduct creates a monopoly profit for the aggressor, it creates one for the plaintiff too." *Id*. No doubt a surviving plaintiff would like to "collect monopoly profits today and also obtain reimbursement for losses sustained in the period of aggression," but that is not allowed. *Id*. So even if ADM succeeded with a scheme of predatory pricing, culminating in sustained monopoly prices, this case would have to be dismissed.

15

### 2. A monopolist forces prices up by forcing production down, but ADM could not force production down.

Second, a fundamental principle of economics and antitrust law holds that a "reduction of output … is essential to monopoly." *Wallace v. Int'l Bus. Machs.*, 467 F.3d 1104, 1107 (7th Cir. 2006). That is because a monopolist, by definition, controls production (output), and the monopolist's "reductions in output … drive up prices as consumers bid for the remaining supply." *Schachar v. Am. Academy of Ophthalmology*, 870 F.2d 397, 399 (7th Cir. 1989). "[I]f a manufacturer cannot make itself better off by injuring consumers through lower output and higher prices, there is no role for antitrust law to play." *Schor v. Abbott Labs.*, 457 F.3d 608, 612 (7th Cir. 2006). And if monopoly prices are "improbable even if some producers give up the market, there is no antitrust problem." *Wallace*, 467 F.3d at 1106.

On the subject of production, the amended complaint reproduces a graph, taken from the U.S. Energy Information Administration, which shows that ethanol production capacity *increased* every year from 2014 through 2018. (Am. Compl. ¶ 32.) A later version of that same graph, from the same source, shows a steady ***increase*** in every year ***through 2020***—the year that supposedly began with ADM charging "higher" prices. Here it is:



(This chart is available at eia.gov/todayinenergy/detail.php?id=45316.[4])

ADM **could not** have been charging monopoly prices in 2020, at the same time the industry was **increasing** its ability to produce **more and more** ethanol. (And capacity increased again in 2021, as can be seen at eia.gov/petroleum/ethanolcapacity/archive/2021/index.php.) Any increase in prices above the competitive level would have immediately drawn more production from the industry's ready and ample capacity, stifling any supracompetitive price increase. Areeda & Hovenkamp ¶¶ 726, 729e3. As the Areeda & Hovenkamp treatise explains, a market with excess capacity is not vulnerable to predatory pricing.

### 3.    Plaintiff claims that ADM's "higher" prices started in "early 2020"— but prices fell then.

Third, it is implausible to suggest that ADM did in fact impose "higher" ethanol prices starting in early 2020. The Federal Trade Commission pays close attention to ethanol prices and the ethanol market. Pursuant to the Energy Policy Act of 2005, FTC writes a report to Congress each year in which it "perform[s] a market concentration analysis of the ethanol production industry … to determine whether there is sufficient competition among industry participants to avoid price-setting and other anticompetitive behavior." FTC, 2020 Report on Ethanol Market Concentration, at 1 (March 3, 2021), *available at* ftc.gov/reports/2020-report-ethanol-market-concentration.[5]

---

[4] The Court may take judicial notice of USEIA's data because its "accuracy and source cannot be questioned." *BG Gulf Coast LNG v. Sabine-Neches Navigation Dist.*, 587 F. Supp. 3d 508, 526 n.17 (E.D. Tex. 2022); *see also In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, 2013 WL 6869410, at *4 (S.D.N.Y.); *In re LTL Shipping Servs. Antitrust Litig.*, 2009 WL 323219, at *7 (N.D. Ga.). At no time, during the proceedings in this Court or in the Seventh Circuit, has plaintiff ever objected to judicial notice of USEIA data.

[5] The Court may take judicial notice of FTC's report, which cannot reasonably be questioned. *E.g.*, *Menominee Indian Tribe v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) ("Judicial notice of … reports of administrative bodies is proper."); *Bell v. City of Country Club Hills*, 841 F.3d

In its report for 2020—again, the year that supposedly *began* with ADM imposing "higher" prices—FTC determined that the "low level of concentration and large number of market participants in the U.S. ethanol production industry continue to suggest that the exercise of market power to set prices … is unlikely." *Id*. at 13. "Over 100 firms produced ethanol in 2020," with the "largest ethanol producer's share of domestic capacity [at] approximately 12 percent, roughly the same as its 2019 share." *Id*. at 6.

FTC's report and data for 2020 also disprove any possible assertion of ADM imposing monopoly prices. That year, ethanol hit ***by far its lowest price*** since at least 2014 (the start of the report's data), and ethanol's price was still *lower* in October 2020 (the end of the report's data) than during much of 2019—when ADM was supposedly *suppressing* prices. *Id*. at 4-5. In addition, FTC estimated ethanol producers' average margins as ***lower*** in 2020 than in 2018. *Id*. at 5. In other words, producers were on average *less profitable* in 2020 than in 2018. *Lower* margins are not the stuff of *monopoly* profits.

\*     \*     \*

To sum up: plaintiff's conclusory allegation of 2020 initiating an era of "higher" prices from ADM is a fantasy. It cannot be made plausible given the facts in the real world. ADM did not have the ability in early 2020 to charge monopoly prices; ADM did not charge monopoly prices then; and ADM did not earn monopoly profits as a result—much less *sufficient* monopoly profits to recoup around *two years* of supposedly predatory pricing. This Court should dismiss this case.

---

713, 716 n.1 (7th Cir. 2016) (same); *Montera v. Premier Nutrition*, 111 F.4th 1018, 1030 n.2 (9th Cir. 2024) (judicial notice of FTC documents); *In re Frito-Lay N. Am. All Nat. Litig*., 2013 WL 4647512, at \*4 (E.D.N.Y.) (judicial notice of FTC documents and data).

## IV.     This Court should dismiss this case with prejudice.

ADM first moved to dismiss this case—because plaintiff failed to allege that it suffered antitrust injury or that ADM had monopoly power, among other reasons—over five years ago. Then, after this Court dismissed the original complaint, plaintiff wrote the amended complaint with the benefit of massive amounts of discovery. Still, plaintiff has always insisted on recoupment via futures and refused to plead any facts showing recoupment via sustained monopoly prices.

The plaintiffs in *United Wisconsin* took the same approach. Then, when ADM moved to dismiss their amended complaint, they asked for leave to amend it again. (*UW* Dkt. 63, Surreply at 13.) But this Court dismissed it with prejudice. There is no reason that the present case should continue when *United Wisconsin* did not, especially given that both suffer from the same fundamental defect.

The (second extended) deadline for amending the complaint passed over four years ago. Any additional amendment now would be untimely in the extreme. Further, for the reasons explained above, any further amendment would be futile. This Court should dismiss the amended complaint with prejudice. *E.g.*, *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015); *Garcia v. City of Chicago*, 24 F.3d 966, 970 (7th Cir. 1994).

## CONCLUSION

ADM respectfully urges the Court to dismiss the amended complaint with prejudice.

Respectfully submitted,

Dated: October 6, 2025                    By: *s/ Stephen V. D'Amore*
                                                 Stephen V. D'Amore
                                                 Scott P. Glauberman
                                                 Samantha M. Lerner
                                                 Matthew R. DalSanto
                                                 Reid F. Smith
                                                 WINSTON & STRAWN LLP

35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600
sdamore@winston.com
sglauber@winston.com
slerner@winston.com
mdalsanto@winston.com
rfsmith@winston.com

*Counsel for Defendant*
*Archer Daniels Midland Company*

### <u>CERTIFICATE OF COMPLIANCE WITH PAGE LIMIT</u>

I hereby certify that the foregoing ADM's Reply in Support of its Motion to Dismiss contains 6,121 words and therefore complies with Local Rule 7.1(B)(4)(b)(1) of the United States District Court for the Central District of Illinois.


Dated: October 6, 2025                    By: <u>*s/ Stephen V. D'Amore*</u>
                                          Stephen V. D'Amore
                                          Scott P. Glauberman
                                          Samantha M. Lerner
                                          Matthew R. DalSanto
                                          Reid F. Smith
                                          WINSTON & STRAWN LLP
                                          35 W. Wacker Drive
                                          Chicago, Illinois 60601
                                          (312) 558-5600
                                          sdamore@wiston.com
                                          sglauberman@winston.com
                                          slerner@winston.com
                                          mdalsanto@winston.com
                                          rfsmith@winston.com

                                          *Counsel for Defendant*
                                          *Archer Daniels Midland Company*

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2025, I caused the foregoing to be served on the

following by filing it with the Clerk of the Court using the CM/ECF system, which will then

send a notification of such filing to all counsel of record, including the following:

Marvin A. Miller
Andrew Szot
MILLER LAW LLC
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
(312) 332-3400
mmiller@millerlawllc.com
aszot@millerlawllc.com

Christopher Levell
Benjamin M. Jaccarino
LOVELL STEWART HALEBIAN JACOBSON LLP
500 Fifth Avenue, Suite 2440
New York, New York 10110
(212) 608-1900
clovell@lshllp.com
bjaccarino@lshllp.com

Joshua H. Grabar
GRABAR LAW OFFICE
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
(267) 507-6085

Dated: October 6, 2025

By: *s/  Stephen V. D'Amore*
Stephen V. D'Amore
Scott P. Glauberman
Samantha M. Lerner
Matthew R. DalSanto
Reid F. Smith
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600
sdamore@winston.com
sglauber@winston.com
slerner@winston.com
mdalsanto@winston.com
rfsmith@winston.com

*Counsel for Defendant*
*Archer Daniels Midland Company*